**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Davy E. STEWART, Defendant–**
**Appellant.**

No. 01–6208.

United States Court of Appeals,
Sixth Circuit.

May 29, 2003.

BEFORE: GUY, SUHRHEINRICH, and BATCHELDER, Circuit Judges.

BATCHELDER, Circuit Judge.

Defendant Davy E. Stewart appeals from his conviction and sentence after a jury found him guilty on four counts of a six-count indictment. Stewart was acquitted on the conduct charged in Counts 1 and 2 of the indictment, and he does not challenge on appeal his conviction on Count 3, which charged him with being an unlawful user of or addict to a controlled substance in possession of a fully automatic AK–47 rifle and a .357 Colt Python, in violation of 18 U.S.C. § 922(g)(3). Stewart contends, however, that the evidence at trial was insufficient to support his convic-

tion on Count 4, knowingly having in his possession a machine gun, as defined at 26 U.S.C. § 5845(b), which was not registered to him in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. § 5861(d); Count 5, knowingly possessing with intent to distribute measurable quantities of a Schedule II narcotic controlled substance, in violation of 21 U.S.C. § 841(a)(1); and Count 6, possessing firearms during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). He further argues that the prosecutor, through the presentation of evidence, and the district court, through the jury instructions, constructively amended Counts 5 and 6 of the indictment. Finding no merit to any of these contentions, we will affirm the judgment of the district court.

## BACKGROUND

On August 22, 2000, Davy Stewart, carrying a fully automatic AK–47 rifle and a .357 Colt Python handgun, entered the home of Rosa Atkinson and demanded keys to the family's truck parked in the backyard. After explaining that the truck would not run, Rosa told Stewart that she would drive him in the family car anywhere he wanted if he would leave her sixteen-year-old daughter Jennifer behind. Stewart agreed and followed Rosa out of the home, but when he turned his back to Rosa, she ran back inside the house, locked the door and called the police. Now outside the Atkinson's home, Stewart attempted to break into a locked van by striking the rear window with the butt of his rifle, which caused the weapon to discharge one round. After breaking the window, Stewart got into the front seat of the van, where Sergeant Joey Barnes of the Kentucky State Police, responding to Rosa's call, found him. Having been warned by the Atkinsons that Stewart was armed, Sergeant Barnes approached the

van and directed him to drop his gun. Upon seeing Stewart's gun pointed at him, Sergeant Barnes fired four shots through the front passenger window of the van. Stewart was hit in the back below his armpit by one shot and was further injured by shattered glass. Officer Barnes arrested Stewart and recovered the loaded AK–47 rifle and a loaded .357 Colt Python handgun. Once Stewart had been taken to the hospital, the police also recovered from his person eight Valium tablets (a Schedule IV non-narcotic), fourteen tablets and two capsules of OxyContin (a Schedule II narcotic), $3932.33 in currency, several phone cards, numerous items of jewelry, and pieces of paper with names and phone numbers.

## ANALYSIS

*Sufficiency of the Evidence*

"We review claims of insufficient evidence to determine whether, taking the evidence in the light most favorable to the prosecution, any reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Yang*, 281 F.3d 534, 551 (6th Cir.2002). In this analysis, circumstantial evidence alone can be sufficient to sustain a conviction. *United States v. Ellzey*, 874 F.2d 324, 328 (6th Cir.1989) (describing how such evidence need not remove every reasonable hypothesis except that of guilt). In deciding this question, "this court neither independently weighs the evidence, nor judges the credibility of witnesses who testified at trial." *United States v. Talley*, 164 F.3d 989, 996 (6th Cir.1999).

*Possession of Unregistered Machine Gun (Count Four)*

■ In order to prove that Stewart violated 26 U.S.C. § 8561(d), the government was required to "show that the defendant

knew of the features of the firearm that bring it within the purview of the statutory definition of a machine gun." *United States v. Morgan*, 216 F.3d 557, 567 (6th Cir.2000) (citing *Stables v. United States*, 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994)). Stewart argues that he did not know that the AK–47 in his possession was fully automatic because he had purchased the gun only that day at a flea market and had fired the weapon only when it discharged one round while he was using it to break into the van. We conclude that the evidence at trial, when viewed in the government's favor, is sufficient to permit a rational trier of fact to find the essential elements of this offense beyond a reasonable doubt. That evidence showed that the gun had been altered from a semi-automatic weapon to one with fully automatic capabilities, and that in its altered condition, the gun had a selector switch that permitted the gun to be manually converted from semi-automatic to fully automatic mode. The government presented evidence that Stewart had previously owned an AK–47 that fired in "rapid succession" and that he was familiar with this type of weapon. Furthermore, the serial number on the gun had been removed, making it impossible to trace the sale of the gun and permitting Stewart to claim without fear of contradiction from the seller that he was ignorant of the characteristics of the weapon. Additionally, the government presented testimony that Stewart was a gun enthusiast who owned and used several guns. Taken as a whole, there is more than sufficient evidence for a rational trier of fact to conclude that Stewart knew of and understood the fully automatic capabilities of this particular AK–47 rifle.

### Possession With Intent to Distribute (Count Five)

■ To prove a violation of 21 U.S.C. § 841(a)(1), the government must show that Stewart actually intended to distribute the Schedule II narcotics found in his possession when he was arrested. Essentially, Stewart argues that his personal drug habit accounted for the drugs he was carrying and that the government failed to present any evidence of his intent to distribute those drugs. Although it is undisputed that Stewart is an abuser of drugs and that the quantity of pills found on his person was relatively small, the government presented testimony sufficient to permit a rational trier of fact to conclude that Stewart possessed these pills, not for personal consumption, but with the intent to distribute them. *See United States v. Harris*, 192 F.3d 580, 589 (6th Cir.1999) (finding evidence of personal use to be offset by sufficient evidence to support a jury's conclusion that the defendant intended to distribute the drugs). Robert Kirkland testified that he had sold Stewart approximately five hundred prescription pills in the three months preceding Stewart's August 22, 2000, arrest. Sally Hoskins, who had lived with Stewart during July and August of 2000, testified that during that time, Stewart had no legitimate employment but was engaged in selling drugs; that she had seen him sell both pills and marijuana; and that he was armed during those drug sales. Finally, the evidence that Stewart was in possession of a large amount of cash, jewelry and loaded firearms when he was apprehended supports the jury's conclusion that he intended to distribute the drugs in his possession. *See United States v. Wade*, No. 90–5934, 1991 WL 158674, at *2, 1991 U.S.App. LEXIS 19418, *5 (6th Cir. Aug. 15, 1991) (noting that a substantial amount of cash and a loaded weapon support a conclusion that the defendant intended to distribute drugs found on him when he was arrested). Although Stewart now complains that the district court erred in

admitting the testimony of Kirkland as Rule 404(b) evidence, we find no error in that ruling, as we will make clear hereinafter. Because the totality of the circumstantial evidence in this case is sufficient to permit a reasonable trier of fact to find the essential elements of the offense beyond a reasonable doubt, we find no merit to this assignment of error.

### Possession of a Firearm in Furtherance of a Drug Trafficking Crime (Count Six)

■ In order to prove the defendant violated 18 U.S.C. § 924(c)(1), the government must show that "a firearm was possessed to advance or promote the commission of the underlying [drug trafficking] offense." *United States v. Mackey*, 265 F.3d 457, 461 (6th Cir.2001) (citations omitted). "In order for the possession to be in furtherance of a drug crime, the firearm must be strategically located so that it is quickly and easily available for use." *Id.* at 462. The court should also consider "whether the gun was loaded, the type of weapon, the legality of its possession, the type of drug activity conducted, and the time and circumstances under which the firearm was found." *Ibid.*

Stewart argues that the government failed to show any evidence that he was trafficking drugs or that the guns in question were in any way used in the furtherance of such a crime. We disagree. In particular, the government demonstrated that at the time of his apprehension and while he was resisting arrest, Stewart had a handgun in his waistband and an automatic rifle beside him in the front seat of the van, both of which were quickly and easily available to him, and that Stewart's possession of the unregistered fully automatic rifle was illegal. Under these circumstances, the jury was entitled to infer that Stewart possessed the guns to protect the drugs and cash he was carrying. *See United States v. Roberts*, 986 F.2d 1026,

1031 (6th Cir.1993) (finding that it is reasonable for a jury to believe that the defendant was carrying his gun to protect his stash of drugs). Accordingly, we hold that taking the evidence in the light most favorable to the prosecution, a reasonable trier of fact could have found the essential elements of the crimes beyond a reasonable doubt.

### Constructive Amendment

■ Along with his claims that the evidence was insufficient to support his convictions, Stewart argues that the government, through its evidence at trial, and the district court, through its jury instructions, constructively amended counts four and five of the indictment. "This Circuit has held that a variance rises to the level of a constructive amendment when the terms of an indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment." *United States v. Barrow*, 118 F.3d 482, 488 (6th Cir.1997) (internal quotation and citation omitted). Such a constructive amendment is per se prejudicial because "it infringes upon the Fifth Amendment's grand jury guarantee." *United States v. Chilingirian*, 280 F.3d 704, 712 (6th Cir.2002). The defendant bears the burden of proving that the government constructively amended his indictment. *Ibid.*

Stewart's constructive amendment argument contains two parts. First, Stewart argues the prosecutor improperly presented the testimony of Robert Kirkland, which was irrelevant to the charges of possession with intent to distribute a Schedule II narcotic and possession of firearms during and in relation to the drug crime. This evidence, Stewart contends, confused the jury and allowed it to convict him on a predicate drug charge that was

wholly unrelated to the events of August 22, 2000. Second, Stewart claims the district court's jury instruction failed to specify that the government had to prove he possessed the firearms "in furtherance" of the drug trafficking crime, but instead allowed the jury to convict him by concluding that he "used" the firearms on August 22, 2000. Because Stewart failed to raise and preserve these objections in the district court, we review for plain error. *United States v. Dedhia,* 134 F.3d 802, 808 (6th Cir.1998) (finding a defendant's failure to object to jury instructions required a plain error analysis in the court of appeals); *United States v. Cowart,* 90 F.3d 154, 157 (6th Cir.1996) (finding that a plain error standard applies when a defendant fails to object to the admission of evidence in the district court). "To establish plain error, a defendant must show that: (1) an error occurred in the district court; (2) the error was obvious or clear; (3) the error affected defendant's substantial rights; and (4) this adverse impact seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Emuegbunam,* 268 F.3d 377, 406 (6th Cir.2001).

### Robert Kirkland Testimony

Stewart correctly contends that the government–merely by presenting evidence of prior bad acts–could not prove that he possessed the drugs on August 22,2000, with the intent to distribute them or that he possessed the firearms during and in relation to the drug-trafficking activity of that date. That, however, is not what the government did here. Well before trial, the government advised both Stewart and the court that it intended to introduce as *res gestae* the testimony of a witness who had traveled to Ohio to purchase drugs of the kind specified in Count 5, and had sold a substantial quantity of these drugs to Stewart on three occasions in the three months prior to August 22, 2000. Stew-

art's counsel agreed that this testimony was not Rule 404(b) evidence and also agreed that it was admissible. That witness was Kirkland. Moreover, at trial the district court clearly instructed the jury that the relevant time period in this case was "on or about August 22, 2000," and we presume that juries follow the court's instructions. *Zafiro v. United States,* 506 U.S. 534, 540, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993); *United States v. Tines,* 70 F.3d 891, 898 (6th Cir.1995). We find no plain error here.

### Jury Instruction

Under 18 U.S.C. § 924(c)(1), "any person who, during and in relation to any crime of violence or drug trafficking crime ... for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm," shall be subject to an additional punishment beyond that required for the underlying crime of violence or drug trafficking crime. The grand jury indictment charged in Count Six that Stewart, "during and in relation to a drug trafficking crime for which he may be prosecuted in a Court of the United States ... did possess firearms," in violation of Section 924(c)(1). The district court began its instructions as to Count 6 by telling the jury that Section 924(c)(1) "makes it a crime for anyone to use or carry a firearm during and in relation to a drug trafficking crime." The court then instructed the jury that in order to convict Stewart on Count 6, they must find beyond a reasonable doubt that Stewart committed the drug trafficking crime alleged in Count 5 (possession of controlled substance with intent to distribute) and that he knowingly possessed either the fully automatic AK–47 rifle and/or the .357 Colt Python "during and in relation to the crime charged" in Count Five. The court went on to instruct that " '[i]n relation to' means that the firearm must have some

purpose, role, or effect with respect to the drug trafficking crime."

Both the indictment and jury instruction charged that Stewart, "during and in relation to" the drug trafficking crime, "possessed" firearms. Neither the indictment nor the jury instruction charged that during and in relation to the drug trafficking offense Stewart "used or carried" firearms, or that he possessed the firearms "in furtherance" of the drug trafficking crime, as required under Section 924(c)(1). Stewart argues that the "in furtherance" prong of Section 924(c) contains three elements: (1) possession (2) during and in relation to (3) and in furtherance of the drug offense, and that the jury was permitted to ignore the "in furtherance" element of the possession charge under Section 924(c) and to convict him on a finding that he merely "possessed" the firearms during and in relation to the drug trafficking crime charged in Count 5, constructively amending the indictment and the requirements of Section 924(c)(1).

We are not persuaded by Stewart's argument. First, to the extent that he attacks the language of the indictment, he does not appear to claim that the indictment fails to state an offense, but rather that its statement is defective. Such an attack must be brought prior to trial. *See* FED. R.CRIM. PRO. 12(b)(3)(B). Second, Stewart misstates the statute. The "in furtherance of" prong of Section 924(c) does not include the "during and in relation to" requirement. Third, to the extent that he attacks the jury instruction, we must review his claim for plain error inasmuch as he neither objected to the instruction the court proposed to and did in fact give, nor proffered an instruction that he claimed was correct. While we agree that the jury instruction was erroneous, the error did not affect Stewart's substantial rights. This court has held that the term "in furtherance of" in Section 924(c) re-

quires that there be a nexus between the gun and the crime charged. *See Mackey,* 265 F.3d at 462. Here the district court instructed the jury that "'[i]n relation to' means that the firearm must have some purpose, role, or effect with respect to the drug trafficking crime." That language was sufficient to require the jury to find such a nexus in order to convict Stewart under Count 6, and the government presented significant evidence to support such a finding. We find no plain error with regard to the language of the indictment and the instruction. Finally, the error in the jury instruction simply does not rise to the level of an amendment of the indictment, constructive or otherwise.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.