NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:  05a0024n.06
Filed:  January 6, 2005

No. 04-5313

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| OLEN ALLMAN, | ) | EASTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellee. | ) | |

Before:  NORRIS and COOK, Circuit Judges; BECKWITH, District Judge.[*]

COOK, Circuit Judge.  The district court convicted Defendant-Appellee Olen Allman of two firearms offenses.  The court sentenced him to five years probation, including six months of home detention, after granting a nine-level downward departure under the United States Sentencing Guidelines.  The government appeals the decision to depart downward.

I.  Facts and Procedural History

Before his arrest, Allman, a sixty-nine-year-old retired steelworker, regularly sold guns without a license at flea markets.  From September 2001 through June 2002, he sold twenty firearms

---

[*]The Honorable Sandra S. Beckwith, United States District Judge for the Southern District of Ohio, sitting by designation.

to undercover ATF agents or cooperating individuals, including one person who told Allman he could not legally buy firearms because he was a convicted felon.

Allman pleaded guilty, and the court convicted him of willfully dealing in firearms without a license and selling a firearm to a person he knew or should have known was a convicted felon. At sentencing, the court calculated an offense level of nineteen, which calls for thirty to thirty-seven months of imprisonment for a person with a Criminal History Category of I. The court departed downward nine levels, however, because Allman's "dealing in firearms at flea markets, which he attended as a stable retiree for enjoyment and where he did not make a substantial profit from his limited sales, was not contemplated by the Sentencing Guidelines" and because of "additional factors cited by defendant in his court filings and testified to at the sentencing hearing." After departure, Allman's sentence was five years of probation, including six months of home detention.

The government appeals, arguing that the factors identified did not support departure. We hold that none of the factors justified departure, either alone or in the aggregate, except possibly Allman's stability as a retiree.

## II. The Factors

Any factor or combination of factors may support downward departure, if it is not prohibited by the Guidelines and takes the case outside the heartland of cases. *United States v. Coleman*, 188 F.3d 354, 361 (6th Cir. 1999) (en banc). A "'factor may be considered in the aggregate if it is 'atypical,' even though it may not be sufficient, in and of itself, to support a departure.'" *Id.*

(quoting *United States v. Jones*, 158 F.3d 492, 499 (10th Cir. 1998)). But a factor that is among those disfavored by the Guidelines, supports departure only if the case is "exceptional." *United States v. Reed*, 264 F.3d 640, 646 (6th Cir. 2001), *cert. denied*, 535 U.S. 962 (2002).

Here, the court relied upon the following factors: (1) flea market location; (2) Allman's "stable retiree" status; (3) that the sales were "for enjoyment" rather than profit; (4) the limited number of sales; (5) Allman's age; (6) Allman's need to care for his ex-wife; and (7) Allman's post-arrest conduct. None of these factors supports departure, except possibly Allman's stability as a retiree.

### A. Flea market gun sales are not atypical.

Illegal gun transactions at flea markets are not atypical. *See, e.g., United States v. Orum*, 106 Fed. Appx. 972 (6th Cir. Aug. 16. 2004) (affirming conviction of selling firearms without a license at flea markets and gun shows); *United States v. Stewart*, 69 Fed. Appx. 213 (6th Cir. 2003) (affirming conviction of possession of an unregistered machine gun, bought at a flea market); *United States v. Highsmith*, 60 Fed. Appx. 517 (6th Cir. 2003) (sentence enhanced for possession of a firearm, bought at a flea market); *United States v. Hatton*, No. 96-5076, 1996 U.S. App. LEXIS 27807 (6th Cir. Oct. 24, 1996) (affirming conviction of selling firearms without a license at a flea market); *United States v. Spencer*, No. 92-6176, 1993 U.S. App. LEXIS 22571 (6th Cir. Aug. 31, 1993) (felon bought two guns at flea market). Therefore the court could not consider this factor in the aggregate.

B. "Stable retiree" status could be atypical.

The court appropriately considered Allman's "stable retiree" status. The government characterizes this factor as "employment history," a disfavored factor. We disagree, because this factor relates to Allman's present stability, not his past employment. Allman apparently contends that he lives a lifestyle typical of retirees, but atypical of illegal firearms dealers. If the district court agrees, it could conclude that Allman therefore presents a low risk of flight or recidivism. While the government correctly observes that Allman is not the only retiree to have engaged in illegal firearm sales, stability as a retiree may be atypical of defendants convicted of his crimes. If so, the district court could consider it.

C. Gun crimes "for enjoyment" are not atypical.

Allman's commission of the crime "for enjoyment" does not help take the case outside the heartland of cases. Though the district court seemed to consider defendant's enjoyment of the flea market milieu as mitigating, the "enjoyment" there included defendant's willfully selling a gun to a felon. In addition, the Sentencing Guidelines specifically contemplate recreational gun use—but do not provide for departure under these circumstances. Section 2K2.1(b)(2) provides for a decreased offense level where the defendant "possessed all ammunition and firearms *solely* for lawful sporting purposes or collection" (emphasis added). The Sentencing Commission and Congress chose not to provide for departure where, as here, a defendant owned a gun for mixed purposes. Because the Sentencing Guidelines considered recreational gun use, but did not provide

for departure under these circumstances, Allman's recreational purpose does not help take this case outside the heartland.

### D. The limited number of sales or sale days was not atypical.

The district court inappropriately considered the limited number of sales or sale days because Section 2K2.1(b)(1) already ties the offense level to the number of firearms sold, and the number of sales or sale days here were not atypical, given the number of firearms.

### E. Allman's age does not support departure.

Age supports departure only when a defendant is both elderly and infirm. *See, e.g., United States v. Fierro*, 38 F.3d 761, 775 (5th Cir. 1994); *United States v. Carey*, 895 F.2d 318, 324 (7th Cir. 1990). Because Allman is not infirm, his age cannot support a departure.

### F. Allman's need to care for his ex-wife is not atypical or exceptional.

Family responsibilities are a discouraged factor, and "[u]sually . . . taken into account when a defendant personally is required to take care of a seriously ill spouse or family member." *United States v. Tocco*, 200 F.3d 401, 435 (6th Cir. 2000) (emphasis omitted). The parties agree that Allman takes care of his sixty-three-year-old ex-wife. But her need of care is not exceptional. She has had some rather common maladies—a heart attack nine years ago, high cholesterol, high blood pressure, and poor circulation in her legs—but she is not "seriously ill," and appears capable of caring for herself. Thus Allman's need to care for her is not atypical or exceptional.

G.  Allman's rehabilitation was not exceptional.

Only exceptional rehabilitation can support downward departure.  "Some degree of presentence rehabilitation is to be expected from a penitent defendant . . . who simply wants to 'put his best foot forward' at sentencing with hopes of receiving leniency. . . .  '[S]uch predictable reactions, while laudable, fall shy of what we believe is necessary to take cases out of the heartland.'"  *Campbell v. United States*, 364 F.3d 727, 732 (6th Cir. 2004) (quoting *United States v. Biehl*, Nos. 98-3318, 98-3346, 1999 U.S. App. LEXIS 1222 (6th Cir. Jan. 25, 1999) (quoting *United States v. Sklar*, 920 F.2d 107, 117 (1st Cir. 1990))).

Allman's rehabilitation is not atypical or exceptional.  Because he cooperated with authorities, he received a three-level reduction in his offense level for acceptance of responsibility.  He has done nothing further to distinguish his case.  Thus his rehabilitation does not help take this case outside the heartland.

III.  Conclusion:  A nine-level departure was inappropriate.

Allman's stability as a retiree, the only factor the district court could possibly have appropriately considered,  may support some departure, but certainly not of the magnitude of nine levels.  In *United States v. Sabino*, we upheld a three-level departure based on the seventy-two-year-old defendant's age and physical condition, absence of a threat to others, absence of flight risk, and minor role in the crime.  274 F.3d 1053, 1079 (6th Cir. 2001).  Allman's stability may make him, like Sabino, less of a threat to others, less of a flight risk, and less likely to commit further crimes.

This may support some downward departure, but not nine levels.  *See also United States v. Bostic*, 371 F.3d 865, 876 (6th Cir. 2004) (82-year-old defendant's infirmities, if substantiated on remand, would be "unlikely" to warrant an eleven-level departure).

We therefore vacate Allman's sentence and remand the case to the district court for re-sentencing, considering Allman's stable retiree status as the only factor potentially supporting downward departure.