In the

# United States Court of Appeals
## For the Seventh Circuit

No. 11-3714

RANDALL RE,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 07 C 1264 — **Charles P. Kocoras**, *Judge.*

ARGUED SEPTEMBER 12, 2013 — DECIDED DECEMBER 4, 2013

Before POSNER, EASTERBROOK, and SYKES, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Randall Re and Gregory Leach owned adjacent warehouses in Englewood, Florida. After leasing space in Leach's warehouse, Jimmy Daughtry told his real estate agent that he did so because Leach represented that a sewer line essential to Re's warehouse crossed Leach's property without permission and lacked permits. The agent passed this information to Re, who might have sent Leach a letter of inquiry or filed a lawsuit against him.

Instead Re hired some goons to beat Leach and threaten him with worse unless he broke the lease. Re wanted Daughtry as his own tenant. These events led to a conviction under the Hobbs Act, 18 U.S.C. §1951, for using extortion to injure Leach's business, which was part of interstate commerce. We affirmed the conviction, 401 F.3d 828 (7th Cir. 2005), and, after a remand, the sentence, 419 F.3d 582 (7th Cir. 2005).

In this collateral attack under 28 U.S.C. §2255, Re contends that his trial and appellate lawyers rendered ineffective assistance—trial counsel because the lawyer stole from Re and appellate counsel because he omitted what Re depicts as an argument certain to prevail. The district court denied the petition with respect to these issues, 2011 U.S. Dist. LEXIS 55334 (N.D. Ill. May 24, 2011), and denied a motion for reconsideration, 2011 U.S. Dist. LEXIS 111437 (N.D. Ill. Sept. 29, 2011). Re raises the same arguments on appeal. We start with the challenge to appellate counsel's performance.

Re submits that *Scheidler v. National Organization for Women, Inc.*, 537 U.S. 393 (2003), provided the basis for a can't-miss argument—an argument that his lawyer nonetheless missed. The Hobbs Act defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear". 18 U.S.C. §1951(b)(2). *Scheidler* holds that the word "obtaining" must be taken seriously, and that threatening someone without "obtaining" money, or money's worth, in return, does not meet the statutory definition. Getting someone else to abandon a property right differs from "obtaining" property, *Scheidler* concludes. Re observes that the indictment does not allege, and the jury did not find, that Leach handed over any money or other property after being beaten and threat-

ened. It follows, Re maintains, that he did not violate the Hobbs Act and that counsel necessarily fell short of his obligations by omitting this argument on appeal.

The attack on counsel's performance is window dressing. If Re is right about the meaning of the Hobbs Act, then he has been convicted of an act that the law does not make criminal and is entitled to relief under §2255 even if counsel did everything possible to protect his interests. See *Bousley v. United States*, 523 U.S. 614 (1998); *Davis v. United States*, 417 U.S. 333 (1974). But Re is not right about the meaning of the Hobbs Act—at least, is not right to attribute to either *Scheidler* or *Sekhar v. United States*, 133 S. Ct. 2720 (2013), a holding that "obtaining" property requires getting it directly from the person threatened. Section 1951(b)(2) speaks of obtaining property "from another"; it does not say that the "another" must be the threat's recipient.

Re had Leach beaten and threatened. A jury could find that Re's goal was to obtain Daughtry as a tenant. Tenancy yields rental payments, a form of property. Re hoped that greater rental income would enable him to sell the warehouse for more, effectively capitalizing the value of the tenancy. *Scheidler* did not address such a situation; it dealt with a prosecution in which the proof showed that the victim abandoned property but the perpetrator did not get anything. Re set out to obtain something of financial value. In *Sekhar*, 133 S. Ct. at 2725 n.2, the Supreme Court reserved the question whether threats to a business competitor that produce a transfer of a customer's revenue violate the Hobbs Act. This shows that the Justices do not view *Scheidler* (or for that matter *Sekhar*) as having settled the issue in Re's favor. And Re does not contend that any circuit has resolved the

question in his favor. *Sekhar* noted that *United States v. Ze-mek*, 634 F.2d 1159, 1173 (9th Cir. 1980), held that the Hobbs Act covers using threats or violence to divert a customer's business from one competitor to another; Re does not cite contrary appellate authority. This knocks out a claim of actual innocence, whether presented through the lens of ineffective assistance or directly under *Bousley* and *Davis*.

Re's reply brief maintains that the sort of theory now advanced by the prosecutor, applied in *Zemek*, and reserved in note 2 of *Sekhar*, was not adequately laid out in the jury instructions, and that he is therefore entitled to a new trial. That's a contention different from the one made in the district court and the opening brief, however. If, as Re argued earlier, he is innocent of any crime, then he is entitled to be acquitted. A request for a new trial comes too late—and this recasting of the theory may explain why counsel omitted it on direct appeal. It had not been presented to the district court at trial, which preceded *Scheidler*, making it hard to frame an appellate issue; and a theory that not only can't succeed without establishing plain error, but also leads at best to a remand for another trial at which conviction is likely, is not one that every competent appellate lawyer will pursue. Raising (relatively) weak issues leaves less space in the brief for stronger ones.

Now for the attack on trial counsel. Re hired Richard Beuke to represent him at trial and suggested that Beuke use Terry O'Donnell (his lawyer in pending divorce proceedings) as an assistant. Three weeks after the jury returned its verdict, Re sold a warehouse located in Woodridge, Illinois. The proceeds were put in escrow, from which O'Donnell embezzled them. O'Donnell claimed that Re owed him some

of this money, but we assume for current purposes that O'Donnell committed theft. After the invasion of the escrow was detected, O'Donnell promised to reimburse Re or his ex-wife but committed suicide before doing so. Re contends that O'Donnell's crime shows a conflict of interest, which requires a new trial without the need to show prejudice. He relies on *Cuyler v. Sullivan*, 446 U.S. 335 (1980), and *United States v. Cronic*, 466 U.S. 648 (1984).

Re does not contend that Beuke acted under a conflict. He maintains that O'Donnell wanted him convicted so that he could steal from the matrimonial estate, though he does not identify any concrete step O'Donnell took to hamper the defense of the Hobbs Act charge. The district judge held that a post-trial crime by a lawyer against his client does not spoil the trial as a matter of law; prejudice must be shown. Re could not establish prejudice, the judge thought, because O'Donnell played only a peripheral role in the trial. Beuke did most of the work and supervised O'Donnell's few contributions. O'Donnell was not a member of the Trial Bar of the Northern District of Illinois and thus could litigate in a criminal trial only under the direct supervision of a more experienced lawyer, such as Beuke.

According to Re, the judge should not have reached these conclusions without an evidentiary hearing. Yet the judge presiding in the §2255 proceeding had conducted the criminal trial. He saw exactly what roles Beuke and O'Donnell had played. Re relies on the principle of *Cronic* that it is unnecessary to show prejudice when a lawyer effectively abandons his client, but he does not contend that Beuke abandoned him. He had un-conflicted legal assistance throughout. Anyway, the Supreme Court has never held

that there can be a conflict of interest, or any other kind of ineffective assistance, by retrospect. The Justices have been unwilling to extend *Cronic* beyond abandonment or a situation in which the defendant effectively was unrepresented, see, e.g., *Wright v. Van Patten*, 552 U.S. 120 (2008); *Bell v. Cone*, 535 U.S. 685 (2002), and Re had not demonstrated that his defense team was missing in action. No other circuit has held that a post-trial crime by a lawyer against his client automatically and retroactively spoils the trial. Establishing prejudice remains essential—and the district judge did not err in concluding that Re has not established prejudice.

AFFIRMED